UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br>    *Plaintiff,*<br>         *v.*<br>OCEAN PERFORMANCE, INC., AND<br>CHRISTOPHER CESTARO,<br>    *Defendants.* | Civil No. 3:10cv1829 (JBA)<br><br>March 19, 2013 |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bank of America, N.A. ("Bank of America") brought this suit for breach of contract and deficiency judgment following Defendants' alleged default under a Security Agreement and Guaranty between the parties. Defendants Ocean Performance, Inc. ("Ocean Performance") and Christopher Cestaro deny Plaintiff's claims, arguing that the disposition of the collateral in this case was not performed in a commercially reasonable manner. (*See* Answer [Doc. # 14] at 5.) Plaintiff now moves [Doc. # 42] for summary judgment, arguing that the sale of the collateral was commercially reasonable. Defendants have not filed an opposition to this motion.[1] Pursuant to Local Rule 56(a)1, a party's failure to file a Local Rule 56(a)2 Statement leaves the statements of fact in the moving party's 56(a)1 statement deemed admitted. Thus, the Court deems all facts enumerated in Plaintiff's 56(a)1 statement [Doc. # 42–7] admitted for the purpose of disposition of Plaintiff's summary judgment motion. For the following reasons, and after a full review of Plaintiff's unrebutted record, the Court concludes that Plaintiff is entitled to summary judgment in this matter.

---

[1] On July 3, 2012, Defendants filed a motion [Doc. ## 43, 44] for extension of time until August 5, 2012 to respond to Plaintiff's motion for summary judgment, which the Court granted (*see* Order [Doc. # 45]). However, in lieu of responding to Plaintiff's motion, Defendants moved [Doc. # 46] to compel arbitration, which motion the Court denied in a separate order [Doc. # 51].

I.   Discussion[2]

   A.   **Breach of Contract**

On December 29, 2005, Defendant Ocean Performance entered into a Security Agreement—Inventory (the "Security Agreement") with Plaintiff according to which Plaintiff agreed to finance the purchase of inventory by Defendant Ocean Performance. (*See* Security Agreement, Ex. B to Pl.'s Loc. R. 56(a)1 Stmt.)  As consideration for Plaintiff's provision of financing to Defendant Ocean Performance, Defendant Cestaro entered into a Guaranty (the "Cestaro Guaranty") with Plaintiff, pursuant to which Defendant Cestaro agreed to pay any indebtedness owed by Defendant Ocean Performance to Plaintiff.   (*See* Cestaro Guaranty, Ex. D to Pl.'s 56(a)1 Stmt.)  The gravamen of Plaintiff's breach of contract claim is that Defendants defaulted on these agreements by failing to repay Plaintiff for the financing of two boats in Defendant Ocean Performance's inventory—the Legacy Boat and the Leggera Boat.

Under North Carolina Law,[3] "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract. *J.T. Russel &*

---

[2] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

2

*Sons, Inc. v. Silver Birch Pond L.L.C.*, 721 S.E.2d 699, 703 (N.C. App. 2011).  In their Answer, Defendants have not raised any invalidity defenses to argue that either the Security Agreement or the Cestaro Guaranty is invalid, and thus the Court presumes that they are valid contracts.  *See Bicycle Transit Authority, Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985) ("Generally, parties are free to contract to anything as long as it is not illegal, unconscionable, or against the public interest.").

The undisputed record also establishes that Defendants breached those contracts.  The Security Agreement states that "failure by Customer or any Guarantor to make any payment to Bank," will constitute a default.  (*See* Security Agreement, Ex. B to Pl.'s 56(a)1 Stmt.)  The Security Agreement further provides that Defendant Ocean Performance will repay Plaintiff for amounts advanced by Plaintiff to Defendant Ocean Performance to purchase inventory.  (*See id.*)    Defendant Ocean Performance agreed to repay the financing advanced by Plaintiff according to the payment terms of its "floor plan" facility:

> The manufacturer builds a boat, say it's a $100,000 boat.  When they finish the boat, they call the bank and say put it on this dealer's floor plan.  The bank pays the boat manufacturer the full price of the invoice.  I have to make the payments.  The dealer has to make the payments on the money.

(Cestaro Dep., Ex. C to Pl.'s 56(a)1 Stmt at 45; *see also* Floor Plan Program Payment Letter, Ex. E to Pl.'s 56(a)1 Stmt.)  Plaintiff provided Defendant Ocean Performance with financing to purchase two boats from Outerlimits Offshore Powerboats, Ltd.

---

[3] The Security Agreement and the Cestaro Guaranty both contain North Carolina choice–of–law provisions. (*See* Security Agreement, Ex. B to Pl.'s 56(a)1 Stmt; Cestaro Guaranty, Ex. D to Pl.'s 56(a)1 Stmt.)  "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012).  "Contracts clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut." *Zenon v. R.E. Yeagher Management Corp.*, 57 Conn. App. 316, 322 (2000).  Thus, the Court will apply North Carolina law to decide Plaintiff's claims.

("Outerlimits")—the Legacy Boat and the Leggera Boat—and placed those boats on Defendant Ocean Performance's floor plan. (*See* Cestaro Dep., Ex. C to Pl.'s 56(a)1 Stmt at 46, 50.) In 2008, Defendant Ocean Performance stopped making payments to Plaintiff for the Legacy and Leggera Boats. (*See id.* at 60.) Thus, under the clear terms of the Security Agreement, Defendant Ocean Performance breached that agreement and was in default as a result of this failure to pay. *See Bituminous Cas. Co. v. Staffmark East, LLC*, 644 S.E.2d 269 (N.C. App. 2007) ("If the language of the contract is clear, the court must enforce the contract as written.")

Plaintiff notified Defendants of this default and demanded payment in full by January 31, 2009. (*See* Dec. 15, 2008 Letter, Ex. G to Pl.'s 56(a)1 Stmt.) Under the terms of the Cestaro Guaranty, Defendant Cestaro "promise[d] to pay to [Plaintiff] on demand all Indebtedness of [Defendant Ocean Performance]." (Cestaro Guaranty, Ex. D to Pl.'s 56(a)1 Stmt.) However, neither Defendant has paid the amount in default. (*See* Pattee Decl., Ex. A to Pl.'s 56(a)1 Stmt ¶ 16.) Thus, by the clear terms of the Cestaro Guaranty, Defendant Cestaro breached that agreement. *See Bituminous Cas. Co.*, 644 S.E.2d at 269. Therefore, based on a review of the undisputed record, Plaintiff has established both elements of its breach of contract claim.

### B. Deficiency Judgment

Furthermore, Plaintiff has established as a matter of law that it is entitled to the deficiency judgment of $639,941.46 that it seeks.[4] Under North Carolina law, after a

---

[4] The amount of principal outstanding on both boats prior to the sale of the collateral was $1,098,893.00. (*See* Notice of Disposition of Collateral, Ex. K to Pl.'s 56(a)1 Stmt.) After the disposition of the collateral for $630,000.00, the total amount outstanding was $583,081.27. (*See id.*) As of June 14, 2012, the date on which Plaintiff's motion was filed, this amount accrued interest such that the total amount outstanding was $639,941.46. (*See* Pattee Decl., Ex. A to Pl.'s 56(a)1 Stmt ¶ 18.)

debtor defaults on its obligation to a secured creditor, "a secured party may sell . . . or otherwise dispose of any or all of the collateral." N.C. Gen. Stat. § 25-9-610(a). "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." *Id.* § 25-9-610(b). "The price received is one of the 'terms' of sale for the purposes of this subsection." *Fritts v. Selvais*, 404 S.E.2d 505, 507 (N.C. App. 1991). "The fact that a greater amount could have been obtained by a . . . disposition . . . at a different time or in a different method from that selected by the secured party is not itself sufficient to preclude the secured party from establishing that the . . . disposition was made in a commercially reasonable manner." N.C. Gen. Stat. § 25-9-627(a).

A disposition of collateral will be considered commercially reasonable if it is made: "(1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* § 25-9-627(b)(1)–(3). "A creditor, when suing for deficiency judgment, bears the burden of proving that the disposition of the collateral was conducted in a commercially reasonable manner—i.e., reasonable notice and commercially reasonable disposition. *NationsBanks of North Carolina, N.A. v. American Doubloon Corp.*, 481 S.E.2d 387, 390 (N.C. App. 1997).

However, North Carolina courts have recognized that granting summary judgment on the issue of commercial reasonableness is rarely appropriate." *See, e.g.*, *NationsBank*, 481 S.E.2d at 390 ("Commercial reasonableness is a jury question and does not readily lend itself to summary judgment, as reasonable minds may differ over what is commercially reasonable."); *Parks Chevrolet, Inc. v. Watkins*, 329 S.E.2d 728, 730 (N.C.

5

App. 1985) ("Because reasonable minds may differ over the application of a standard such as commercial reasonableness, this determination is inherently a jury question which does not readily lend itself to summary judgment.").

In their Answer, Defendants argue that Plaintiff's sale of the Legacy and Leggera Boats was "not performed in a commercially reasonable manner." (Answer at 5.)[5] Specifically, Defendants have argued that the price Plaintiff received for the Legacy and Leggera Boats was commercially unreasonable in that it was too low. (*See* Defs.' Discovery Responses, Ex. L to Pl.'s 56(a)1 Stmt.; Cestaro Dep., Ex. C to Pl.'s 56(a)1 Stmt at 69 ("I will say that whoever decided to sell them at these prices was ridiculous.").) North Carolina courts have recognized three factors that may be considered to determine whether a price is commercially reasonable: "(1) the price reflected by price handbooks, (2) the fair market value of the collateral, and (3) the price received on a second resale." *Fritts*, 404 S.E.2d at 507. Plaintiff relies on the testimony of Michael Fiore, the founder of Outerlimits, to establish that the sale price of the Legacy and Leggera Boats represented the fair market value of the collateral at the time they were sold, and was thus commercially reasonable. (*See* Fiore Dep., Ex. F to Pl.'s 56(a)1 Stmt at 32–33, 49–52.) In support of this assessment, Mr. Fiore testified that the only other comparable boat that was sold during the time period in which the collateral was disposed of was sold for roughly $300,000.00 (*see* Fiore Dep. at 34), which was approximately the same amount as the Legacy and Leggera Boats, which were sold for $310,000.00 and $320,000.00 respectively (*see* Bills of Sale, Exs. I and J to Pl.'s 56(a)1 Stmt).

---

[5] Defendants do not appear to contest the sufficiency of the notice of disposition. (*See* Notices of Disposition, Ex. K to Pl.'s 56(a)1 Stmt.)

While Defendant Cestaro testified in his deposition that the Legacy and Leggera Boats should have garnered at least $500,000 each when they were sold (*see* Cestaro Dep., Ex. C to Pl.'s 56(a)1 Stmt at 95), he admitted that in 2008 there was "a decline in the entire industry," and stated that his sales had gone from $13 million in 2005 to $3 million in 2008. (*Id.* at 37.) When asked why he thought he was unable to sell the Legacy and Leggera Boats, Defendant Cestaro replied that "the economy had just turned and suddenly everything was worth half of what it was supposed to be worth." (*Id.* at 70.) Notably, the Legacy and Leggera Boats were each sold for roughly half of their respective retail prices of over $600,000.00. Thus, Defendant Cestaro's testimony does not amount to the independent evidence of a gross inadequacy in price that is typically required to raise a genuine issue of material fact as to the commercial reasonableness of the sale price of collateral. *See Allis–Chalmers Corp. v. Davis*, 245 S.E.2d 566, 569 (N.C. App. 1978) ("[W]hen the debtor offers independent evidence of a gross inadequacy of price, in North Carolina, that sufficiently raises the issue of the commercial reasonableness of the sale to take the case to the jury.")

Furthermore, Plaintiff argues that it need not submit additional evidence that the price was commercially reasonable because Defendants do not specifically challenge the commercial reasonableness of any aspect of the sale other than the price received, and under North Carolina law, "[o]nce the secured party makes a prima facie showing that the sale was otherwise 'commercially reasonable' . . . then the price he receives for the collateral must be accepted as competent evidence of the value of the collateral and, therefore, as competent evidence that the price was 'commercially reasonable.'" *Allis–Chalmers Corp. v. Davis*, 245 S.E.2d 566, 570 (N.C. App. 1978). In their pleadings, Defendants have not disputed the commercial reasonableness of any aspect of the sale

7

beside the price recovered for the collateral. Mr. Fiore testified that he had every incentive to sell the Legacy and Leggera Boats for as much as possible. (*See* Fiore Dep. at 25–26.) He advertised the Legacy Boat online and at boat shows (*see id.* at 67–68), which Defendant Cestaro recognized as the industry standard method for selling similar boats (*see* Cestaro Dep. at 40–43). After these methods failed, the Legacy Boat was eventually sold to a customer of Plaintiff, who Mr. Fiore testified was the only cash buyer to materialize for the Legacy Boat. (*See* Fiore Dep., Ex. F to Pl's 56(a)1 Stmt at 31 ("[W]e worked with [Plaintiff] to try to get the customer up as high as he could, but he was a car dealer and he had cash so he was in control.").) Furthermore, Mr. Fiore used even more extensive sales techniques to sell the Leggera Boat, and testified that "[y]ou couldn't have worked any harder to sell something if you tried." (*Id.* at 52.) There is nothing in the record to rebut the commercial reasonableness of Outerlimits' attempts to sell the Legacy and Leggera Boats. Therefore, Defendants fail to raise a genuine issue of material fact as to the commercial reasonableness of the sale of the collateral, and Plaintiff's motion for summary judgment as to the deficiency judgment is granted.

## II.     Conclusion

For the reasons stated above, Plaintiff's Motion [Doc. # 42] for Summary Judgment is GRANTED. The Clerk is directed to enter judgment in favor of Plaintiff in the amount of $639,941.46, and to close the case.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of March, 2013.

8